Debtor, US Tommy Inc. Appellant vs. Crimson Cleveland Hotel Investors, LLP-Appalee. Oral argument not to exceed 15 minutes per side. Mr. Nemeth for the appellant, you may proceed. Good afternoon, Mr. Nemeth. I understand you have 15 minutes. Have you reserved anything for rebuttal? I have, Your Honor. The appellant reserves three minutes for rebuttal argument. Thank you. If it pleases the court, I am representing the appellant in this case, US Tommy Inc. US Tommy Inc. is a New York corporation that's operated a hotel in downtown Cleveland since 1989, so for about 30 years. The corporation consists of one family, the Lin family. Only one of the members of the Lin family who owns shares in the corporation is active, and that would be Robert Lin, who's the general manager of the hotel. The hotel ran into financial troubles in 2011, and its primary lender, Grand Pacific, initiated a foreclosure at that time. The debtor had taken out a loan with Grand Pacific in July of 2005. The foreclosure case was resolved. There was a forbearance agreement, and everything was going well until about 2017. At that time, Your Honors, external forces created some financial problems for US Tommy. The Euclid Avenue corridor in Cleveland was remodeled, which shut down the road on which the hotel sits and made it difficult to access the hotel. The hotel's revenue went down, and it defaulted on the forbearance agreement, and a foreclosure was again initiated by Grand Pacific. The debtor filed this Chapter 11 in order to reorganize rather than lose the hotel. The debtor is appealing the dismissal of its Chapter 11 case by the trial court judge, which was an abuse of discretion. Specifically, the dismissal purports to grant the motion that was filed by Grand Pacific on November 22, 2017. But importantly, none of the grounds that are set forth in the motion, the November 22 motion, existed at the time that the motion was granted. The motion was not granted until six months later, May 22, 2018. Specifically, the grounds that were set forth in the motion to dismiss all had to do with the debtor's use of cash collateral and adequate protection that would be provided to Grand Pacific in order to use the cash collateral. For example, the parties agreed that the debtor would provide weekly reports to Grand Pacific about what it was doing, what expenditures it was making with the income that was coming in, the cash collateral. Several of the weekly reports were delinquent at the beginning of this process, and so the motion to dismiss related to the delinquency of those reports. But importantly, all of the grounds that were set forth in the motion to dismiss were resolved well before the motion was granted. The debtor had problems with its bookkeeping system, and so the debtor needed to spend some time to get a new bookkeeper and new bookkeeping software to transfer 30 years' worth of bookkeeping data entries over to the new software so that it could generate these weekly reports that were required by Grand Pacific. Grand Pacific also complained that it thought that the weekly reports from the debtor were not good enough. It wanted third-party confirmation that these expenditures were appropriate, and so it asked the debtor to provide receipts for every expenditure that the debtor was making during the course of the Chapter 11, and the debtor did so. So the debtor needed to accumulate receipts and needed to accumulate them retroactively to the beginning of the case. That took some time, but all of these issues – yes, Your Honor. If the issues – and I'm not contradicting you – but if the issues that prompted the motion to dismiss had been resolved, why was the motion continued for six times, seven times? Well, I don't know, Your Honor. To me, the motion should have been withdrawn. In fact – But it wasn't, so there was the sword of Damocles hanging over the debtor. At least the relief requested was in contemplation. Well, yes, that's what we're complaining about here today, Your Honor, and that's what we're appealing. I mean we don't feel that the basis for the dismissal was grounded in anything that was appropriate. Are you suggesting that the debtor didn't have notice of the basis for dismissal because the grounds were not the same as originally filed over this many-month period? Well, I will say this, that at the May 1 hearing, the court indicated to the debtor – interesting that what the court said to the debtor was that it does look like you have a workable plan here, but I'm concerned that it doesn't seem to be a plan that requires the bankruptcy court. So if you don't have a deal, if you haven't worked out a deal in three weeks with Grand Pacific, then I'm going to dismiss the case. And the problem with that in my view, in my client's view, is that it put 100 percent of control of the case within Grand Pacific's grasp. So here you have a trial court that's saying it looks like you have a workable solution, and yet if you can't get Grand Pacific to agree to a number, then I'm going to throw the case out. The trial court was commenting on the representation that there was a buyer for the claim. It didn't have anything to really do with the debtor's plan to either liquidate or reorganize. Well, that's correct, Your Honor. And my belief is that Grand Pacific had said that it would consider being bought out. And so we were operating under the belief that Grand Pacific wanted to be bought out and that if we could reach an agreement, that that would probably be the most effective way to reorganize the debtor. And so we were trying to come up with a figure. In fact, we did provide Grand Pacific with two offers, which they rejected out of hand. What we didn't know was that six days after the dismissal, a deal was reached with some other party. So they were apparently dealing with another party and not letting us know that. If we had known that they didn't have any interest, as they were feigning to, we would have pursued another path of reorganization because we had a company.  Pardon me? Was that deal consummated? The sale of their interest. There is a substitute plaintiff in the foreclosure case. That's my understanding, Your Honor. So if this court were to adopt your position in reverse, what would happen? Well, it would go back to the bankruptcy court, Your Honor. I feel like the buyer knows that the case was going to appeal because we appealed it right away and purchased at their own risk. I'm sorry. Purchased the lender's interest. Yes. There was a statement in one of the briefs that the receiver, post-dismissal, entered into an agreement to sell the receivership's interest. Is that correct? And the receivership's interest wouldn't be the lender's interest. It would be whatever property the receivership estate. My understanding is that the interest that was sold was Grand Pacific's note, not the receiver's interest. To be honest, Your Honor, I haven't had much involvement in the state court proceedings. So once the case was dismissed in the bankruptcy court, it went to my co-counsel, Mr. Pappas, who we've reserved three minutes for rebuttal. So perhaps he can respond to that question at that time. I think the question, at least from my point of view, I think picks up on Judge Opperman's question. What relief could we give at this point if we were persuaded that it was an abuse of discretion? Is there anything that would come in to be reorganized? Is it just the lender's interest that was sold, or was the hotel sold? No, no, no. Just the lender's interest in the hotel was sold, Your Honor. In fact, my client continues to… You say the lender's interest in the hotel. Just the loan. The loan. Yeah, the note. That's right. So if the court reverses… Well, the hotel still belongs to the receivership. I'm sorry? The hotel still belongs to the debtor and the receivership. That's right. The receiver was appointed in the foreclosure proceeding to sell the hotel and the lender's interest, but the hotel itself has not been sold, is my understanding. So who operates the hotel today? I'm sorry? Who operates the hotel today? The debtor? It's my understanding that the receiver is still operating the hotel, except not on behalf of Grand Pacific, on behalf of Crimson Cleveland, who bought Grand Pacific's interest. So no one associated with the debtor, U.S. Tommy, is running the hotel on a day-to-day basis? No, U.S. Tommy has been hired by the receiver to run the hotel on a day-to-day basis. They have not been removed. All right. Yeah, they're still on site. Thank you. All right. I'm running out of time here, Your Honor, but let me just say this. None of the grounds for cause set forth in 11 U.S.C. 1112B were present in this case. Counsel for Grand Pacific in a brief cites a number of cases indicating that if you dismiss a case for cause, you don't necessarily have to use one of the grounds elicited in the statute, but all of the cases that are referenced by counsel were cases that could not be more dissimilar from this case. All of those cases were dismissed, in fact, for bad faith, not for cause, although bad faith, I suppose, could be deemed to be a cause, but they were all cases in which, for example, the only purpose was to avoid a non-compete clause or the only purpose was to avoid a sale agreement. In most of the cases, there was no entity, there was no cash flow, there was no business, and there was a lot of evidence of bad faith. In this case, the debtor really was doing everything right. I mean, the debtor was operating the hotel profitably. The debtor was paying $28,000 a month, which is more than the statute for adequate protection would have required it to pay. It was making the U.S. quarterly fees. It was filing its monthly reports to the U.S. trustee. It was diligently negotiating with the prospective purchasers. They're engaged. They're still interested in the hotel. They still would like to be involved and get it reorganized. The prospective purchasers, Your Honors, want to stay in Chapter 11 because they believe that the other lien holders, and there are other lien holders. This is not a two-party dispute. There's an SBA loan for $1 million, and the state has some tax liens, and then there's a whole host of general unsecured creditors. The debtor hopes to get some value to all of those creditors. With this dismissal, of course, all of the value will only go to Grand Pacific. I'm out of time here, but Your Honors, the debtor believes that a reorganization is not only probable, possible but probable, and believes that the case should be reversed and sent back to the bankruptcy court for further proceedings. Thank you. Counselor, before you leave the podium, I want to leave you with just one question, follow-up to my colleagues. The brief that was filed says, and I'm quoting, after the case was dismissed, Grand Pacific's court-appointed receiver entered into an agreement to sell its interest, as is, to ST3614 Euclid LLC for $2.6 million. So I am left with confusion as to what was sold because it sounds like the receiver is no longer in place. Your Honor, may I have Mr. Pappas address that because he's been more involved with the state. You have reserved some time for rebuttal. I'm just letting you know that's one of my lingering questions. Thank you so much. Thank you. Thank you. Good afternoon. Good afternoon, Your Honors. May it please the Court. My name is Heather Heverline. I'm here as counsel on behalf of the Substitute Epoly Cleveland Crimson Hotel Investors, LLLP. In its appeal, U.S. Tommie argues that the bankruptcy court committed an abuse of discretion by granting Grand Pacific's motion to dismiss U.S. Tommie's Chapter 11 case because none of the grounds that were cited in the motion to dismiss were present at the time the bankruptcy court determined that dismissal was appropriate. In the motion to dismiss, Grand Pacific requested that the case be dismissed for cause under Section 1112B of the Bankruptcy Code, which provides a list of factors that courts can consider or that constitute grounds for dismissal. When the motion to dismiss was filed, U.S. Tommie was delinquent in accountings and weekly reports that it promised to provide and agreed to provide, and the court ordered them to provide in the cash collateral orders. Mr. Nemeth mentions that Grand Pacific somehow wanted third-party verification of the amounts. That's not actually what it was requesting. It was just requesting some information that U.S. Tommie had agreed to provide to show what the expenses were. In the cash collateral order, the order required U.S. Tommie to attach supporting documentation to its weekly reports, and it hadn't done that and didn't comply with those orders until January 23, 2018. So we're talking two and a half months after the motion to dismiss was filed. The legislative history to 1112B suggests that the court can consider a variety of factors and can consider the totality of the circumstances as they arise. In this case, right before each hearing, U.S. Tommie would supplement some of the requested information, and it trickled in over time for two and a half months. Over time, some of the causes for dismissal and the reasons why Grand Pacific ended up seeking dismissal evolved over time. At the beginning of the case, U.S. Tommie suggested that its exit strategy to come out of bankruptcy was to find a buyer for Grand Pacific's claim. We started talking about that in December. At each hearing, Judge Price-Smith, the bankruptcy court judge, would ask U.S. Tommie where the case was going, where it was in seeking alternative financing, and each time there was a reason why maybe it didn't have that financing. Ultimately, we got to a hearing on May 1st where U.S. Tommie had filed a plan suggesting that Grand Pacific would need to take a discount on the amount of its claim. I think it would be accepting less than half of its claim at the till rate. The plan itself was only five pages long. The disclosure statement didn't have anything attached to it to suggest how the plan could work, any projections, nothing. It was only at that hearing, or right the morning of that hearing, that Grand Pacific first received an LOI of interest to purchase its claim from this potential purchaser that U.S. Tommie had identified. The plan was filed on, what was it, March 30th? Yes. So you had about a month to digest the five-page plan, correct? Yes. Fair enough. Interestingly, U.S. Tommie also didn't ask for the disclosure statement to be approved or file a motion to approve the adequacy of the disclosure statement. We got to the hearing on May 1st. They submitted the offer that was based on an appraisal that Grand Pacific had never seen. It was offering approximately liquidation value for, or what it determined liquidation value for the hotel was. Mr. Nemeth, when he was talking and making his presentation, he was talking about how U.S. Tommie was operating under the impression that Grand Pacific was interested in selling its claim. That's not necessarily untrue, but some of these discussions were happening back in December. We went five months with nothing. So there was some other interested parties outside of the bankruptcy court interested in buying Grand Pacific's claim. And if I may clarify some of your questions to Mr. Nemeth,  Grand Pacific did accept an offer to sell its claim. I believe that transaction closed in September of 2018, so three months after the dismissal. At the same time, the state court-appointed receiver, who is in possession and control of the property and who has hired Mr. Lynn, who is the principal of U.S. Tommie, to manage the property, also had found a buyer and entered into a potential purchase agreement and bid procedures. That hasn't been resolved yet. So Grand Pacific's claim was sold to Crimson Cleveland Hotel Investors. The receiver has also found an interested party, has filed bid procedures to sell the property. So there are interested people in purchasing the hotel. And that's kind of the status of where we are subsequent to the dismissal. So your client still has a lien on the hotel and related assets? Yes. U.S. Tommie also complains that it didn't have notice of the motion to dismiss and the hearing that ultimately occurred on May 22. And that argument to me is somewhat disingenuous, given that the motion itself was filed back in November of 2017. The court held six hearings. At each of the hearings, there was discussion about where the case was going, the judges' concerns about how U.S. Tommie was going to resolve its Chapter 11 case, and its strategy for doing that was more about how it was going to handle itself outside of bankruptcy as opposed to managing its operations inside. And so, as I stated previously, when we got to May 1st and we had seen the more or less form plan, the disclosure statement that was incomplete, we received an offer from a third party who had not been involved in the case at all and that Grand Pacific really had no dealings with, prior to that time, a very low amount in its opinion. Grand Pacific sought dismissal again at that hearing. The motion to dismiss was never overruled by the court prior to it. It wasn't revived by the court or anything. It remained pending. It remained pending. It was adjourned every time. I'm sorry. Right. And I understand all that, but you could recast the facts slightly different to say, well, why didn't you amend or supplement the motion to dismiss to include a failure to have a potential buyer, purchaser, or whatever. And whilst I understand that May from December through January and February, that was kind of in the works, certainly by the time you have the plan, which is the end of March, it's five pages, you would know right away that it doesn't look very viable, so simply file a supplement or an amendment to your motion to include these factors. Why didn't that occur? That's a fair point, Your Honor, and I think Grand Pacific probably could have done that, except for the discussion at each of the hearings, especially with respect to the February hearing where the debtor suggests that it was asking simply for additional time to file a plan and disclosure statement, and then the court said, okay, we can do that, and if the parties are comfortable with what's happening, we can have a hearing on the confirmation of the plan and the disclosure statement, or we can reset the hearing on the motion to dismiss and the use of cash collateral. So it was more or less a function of the discussion with the court that when she set the hearing on the motion to dismiss, it was because Grand Pacific felt that that was the time that it could have addressed those issues at the May 1st hearing. Thank you. U.S. Tommie's other argument is that an evidentiary hearing wasn't conducted, although the case law suggests that when the record is sufficiently established, an evidentiary hearing isn't required, and also U.S. Tommie never asked for an evidentiary hearing, and it never really asked for the motion to dismiss to be withdrawn either, which is another one of their arguments. U.S. Tommie, in its briefs, makes a point to say that there were some discussions and a representation that the motion to dismiss would be withdrawn at some point along the way. However, there is a qualification in there by U.S. Tommie's counsel that if all of these reportings were given, and this was at the December 5th hearing, that if U.S. Tommie is found in compliance, then the expectation would be that the motion to dismiss would be withdrawn. But at the very next hearing, they were still not in compliance. It wasn't until the day before the January 23rd hearing that they finally had delivered most of those accountings, and at that point, Grand Pacific hadn't even had a chance to review all of that information to figure out if anything was missing. Is it a fair statement from the record that at the May 1st hearing, Grand Pacific left that hearing with an understanding the case would be dismissed in 21 days if they didn't accept an offer on the property? Yes, Your Honor. At the May 1st hearing, there was a representation by debtor's counsel that the LOI that it had presented required an agreement as to price by May 15th of 2018. So the judge at that hearing said, well, I will give you until May 22nd. If we don't have an agreement, then we're done. So she essentially gave your client veto power, right? Right. But ultimately, Grand Pacific submits that cause for dismissal did exist and that the case had been pending for seven months. We hadn't had any real progress towards resolving the case. While a plan had been filed, it was more or less a form plan and a disclosure statement, and really what was required was an agreement by Grand Pacific to sell its claim for a price that it had not agreed to and which it's not required to do in order to resolve the debtor's case. Have you cited any law wherein this notion that the grounds for relief requested can evolve over time without it being in writing and evolve just based on the practice of the hearing? Well, just the legislative history of 1112B that says the court can consider all of the circumstances of the case to determine whether or not cause exists to dismiss. Thank you. I don't have any other questions. Do you have other arguments? That's it, Your Honors. Very good. Good. Thank you. May it please the Court, Len Pappas for U.S. Tommie, and Judge Wise to answer your question about the so-called purchaser. What's interesting, and I'm an old trial lawyer, not a bankruptcy lawyer. My colleague here, Mr. Nemeth, is the bankruptcy attorney. But this is a problem when you don't have an evidentiary hearing and you only hear statements of counsel. You don't have something to look at in the record. We don't have letters of intent with dates on them that we can verify what actually happened. And in this case, just to answer your question, and it's ironic because Grand Pacific is not here. We have the note buyer, Crimson Cleveland, is here, took Grand Pacific's position. May 28th, as my colleague said, six days after the hearing of May 22nd, I believe, which the order went into effect on June 5th. So what had happened is they actually had, according to Grand Pacific's own vice president, which I can't present because we don't have evidence that was ever submitted to the court. We never had that opportunity to present it. Did your client request that opportunity? Well, absolutely. I mean, the reason that we're here is that we never had that opportunity. My client's family has this hotel for over 30 years. We filed to reorganize. We had the opportunity to get some additional investments to pay off the other creditors. Where is it in the record that you requested an evidentiary hearing or an opportunity? Well, like I said, I'm not a bankruptcy lawyer, but generally in normal trial courts, we have evidence before you make a decision. The court speaks through its record. There's nothing in the record to justify what the court did. We only have arguments of counsel. It's black letter law, at least in my day, that arguments of counsel, what I say is not evidence. It's what comes through on the witness stand or what's submitted to the court. What's submitted is evidence or what's stipulated by counsel. There were no stipulations that I saw in the transcripts that said this is what actually happened. We have Mr. Nemeth, Ms. Heberlein talking about what's going on, but there's no evidence. And even the judge's order dismissing the case refers to transcripts, not evidence. But anyway, I just wanted to answer your question real quick. So what happened, May 28th, Grand Pacific signed over their note to somebody else, Crimson Cleveland. From May 28th through August, whatever date it was, the receiver was marketing the property. They got a number of $2.6 million. Again, we can't prove it because I don't have the evidence here that was submitted. But Crimson Cleveland, who bought the note, rejected that offer, and that's where we stand now in state court. In the meantime, my client has continually operated the hotel under the auspices of the receiver, who basically monitors it. But it's been the same operation all this time. We made the adequate protection payments, the current expenses, the utilities, everything from the date the petition was filed. Everything's been paid. And we never got the opportunity to even hear the plan, let alone talk about confirming a plan. We had two offers, and the original letter of intent was back in January. The offers came February and March. And in the meantime, Grand Pacific sold out. They're complaining about not enough money, but, you know, they had a we don't know what it was because we don't have the evidence. We weren't able to subpoena anything or bring anybody in. But the bottom line is, no, it was not sold. The hotel is still under the receivership. We would like that opportunity to go back, present our plan. We have an investment strategy. We have a new note buyer, not Grand Pacific. They're out of here. They're gone. And that's all we were asking for, is the opportunity to reorganize. We have 17-plus, excuse me, employees. We have, you know, the family interest. We have other creditors that this was not a two-party thing. Grand Pacific basically, as you indicated, had veto power. They're the ones that came in and vetoed this. The trustee did not object. None of the other creditors objected. The State of Ohio did not object. They all had interest in this. I think you're out of time. I am. I thank you. Thank you so much. This honorable court now stands adjourned. Thank you. Thank you. Thank you. Thank you.